Richard A. Smith
SMITH & LOWNEY, PLLC
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| WASTE ACTION PROJECT, a non-profit corporation,<br><br>Plaintiff,<br>v.<br><br>PSF MECHANICAL INC.,<br><br>Defendant. | ) | COMPLAINT |

## I. INTRODUCTION

1. This action is a citizen suit brought under Section 505 of the Clean Water Act ("CWA") as amended, 33 U.S.C. § 1365. Plaintiff Waste Action Project, seeks a declaratory judgment, injunctive relief, the imposition of civil penalties, and the award of costs, including attorneys' and expert witness fees, for Defendant PSF Mechanical Inc.'s repeated and ongoing violations of Sections 301(a) and 402 of the CWA, 33 U.S.C. §§ 1311(a) and 1342, and the terms and conditions of its National Pollutant Discharge Elimination System ("NPDES") permit authorizing discharges of pollutants from Defendant's Seattle, Washington, facility to navigable waters.

## II. JURISDICTION AND VENUE

2. The Court has subject matter jurisdiction under Section 505(a) of the CWA, 33 U.S.C. § 1365(a). The relief requested herein is authorized by 33 U.S.C. §§ 1319(d) and 1365(a).

3. Under Section 505 (b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A), Plaintiff notified Defendant of Defendant's violations of the CWA and of Plaintiff's intent to sue under the CWA by letter dated and postmarked May 6, 2010 ("Notice Letter"). A copy of the Notice Letter is attached to this complaint as Exhibit 1. The allegations in the Notice Letter are incorporated herein by this reference. Plaintiff notified the Defendant's Registered Agent, the Administrator of the United States Environmental Protection Agency ("USEPA"), the Administrator of USEPA Region 10, and the Director of the Washington Department of Ecology ("WDOE") of its intent to sue Defendant by mailing copies of the Notice Letter to these officials on May 6, 2010.

4. More than sixty days have passed since the notice was served and the violations complained of in the Notice Letter are continuing or are reasonably likely to continue to occur. Defendant is in violation of its NPDES permit and the CWA. Neither the USEPA nor the WDOE has commenced any action constituting diligent prosecution to redress these violations.

5. The source of the violations complained of is located in King County, Washington, within the Western District of Washington, and venue is therefore appropriate in the Western District of Washington pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1).



Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

## III. PARTIES

6. Plaintiff, Waste Action Project, is suing on behalf of itself and its member(s). Waste Action Project is a non-profit corporation organized under the laws of the State of Washington. Waste Action Project is a membership organization and has at least one member who is injured by Defendant's violations. Waste Action Project is dedicated to protecting and preserving the environment of Washington State, especially the quality of its waters.

7. Plaintiff has representational standing to bring this action. The recreational, economic, aesthetic and/or health interests of Waste Action Project and its member(s) have been, are being, and will be adversely affected by Defendant's violations of the CWA. The relief sought in this lawsuit can redress the injuries to these interests.

8. Plaintiff has organizational standing to bring this action. Plaintiff has been actively engaged in a variety of educational and advocacy efforts to improve water quality and to address sources of water quality degradation in the waters of Puget Sound. Defendant has failed to fulfill monitoring, recordkeeping, reporting and planning requirements, among others, necessary for compliance with its NPDES permit and the CWA. As a result, Plaintiff is deprived of information necessary to properly serve its members by providing information and taking appropriate action, and Plaintiff's efforts to educate and advocate for greater environmental protection for the benefit of Plaintiff's members is precluded. Thus, Plaintiff's organizational interests have been adversely affected by Defendant's violations. These injuries are fairly traceable to Defendant's violations and redressable by the Court.

9. Defendant is a corporation authorized to conduct business under the laws of the State of Washington.



Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

10. Defendant owns and operates a facility used for storage, transfer, and maintenance of large equipment, located at 9322 14th Ave. S., Seattle, King County, Washington, 98108 (the "facility").

## IV. FACTS

11. Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of pollutants by any person, unless in compliance with the provisions of the CWA. Section 301(a) prohibits, inter alia, such discharges not authorized by, or in violation of, the terms of a NPDES permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

12. The State of Washington has established a federally approved state NPDES program administered by the WDOE. WASH. REV. CODE § 90.48.260; WASH. ADMIN. CODE ch. 173-220. This program was approved by the Administrator of the USEPA pursuant to 33 U.S.C. § 1342(b).

13. Pursuant to Section 402(a) of the CWA, 33 U.S.C. § 1342(a), the WDOE has repeatedly issued the Industrial Stormwater General Permit, most recently on October 21, 2009, (the "General Permit"). The General Permit, in its various iterations since its first issuance in 1993 containing comparable requirements, authorizes those that obtain coverage under the General Permit to discharge stormwater, a pollutant under the CWA, and other pollutants contained in the stormwater to the waters of the State subject to certain terms and conditions.

14. Pursuant to Condition S2 of the General Permit, Defendant filed with the WDOE an Application for General Permit to Discharge Stormwater Associated with Industrial Activity. WDOE granted Defendant coverage under the General Permit for Defendant's facility under Permit Number SO3000246D.



Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

15. The General Permit imposes certain terms and conditions on those covered thereby, including monitoring and sampling of discharges, reporting and recordkeeping requirements, as well as restrictions on the quality of stormwater discharges.

16. Defendant's facility is engaged in industrial activity and discharges stormwater and other pollutants to the Duwamish River and/or its tributaries via the City of Seattle storm sewer system.

17. Discharges from Defendant's facility contribute to the polluted conditions of the waters of the State. Discharges from Defendant's facility contribute to the ecological impacts that result from the polluted state of these waters and to Plaintiff's and its members' injuries resulting therefrom.

18. The vicinity of the facility and the receiving waters are used by the citizens of Washington and visitors, as well as at least one of Plaintiff's members, for recreational activities, including biking, fishing and nature watching. Plaintiff's member(s) also derive(s) aesthetic benefits from the receiving waters. Plaintiff's and its members' enjoyment of these activities and waters is diminished by the polluted state of the receiving waters and by Defendant's contributions to such polluted state.

19. Defendant has violated the General Permit and Sections 301(a) and 402 of the CWA, 33 U.S.C. §§ 1311(a) and 1342, by discharging pollutants in violation of an NPDES Permit. Defendant's violations of the General Permit and the CWA are set forth in full in the Notice Letter attached hereto as Exhibit 1 and are incorporated herein by this reference.

20. Defendant's violations of the CWA degrade the environment and the water quality of the receiving water bodies.



Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

21. Defendant’s violations were avoidable had Defendant been diligent in overseeing facility operations and maintenance.

22. Defendant has benefited economically as a consequence of its violations and its failure to implement improvements at the facility.

## V. CAUSE OF ACTION

23. The preceding paragraphs and the allegations in the Notice Letter are incorporated herein.

24. Defendant's violations of its NPDES permit described herein and in the Notice Letter constitute violations of sections 301 and 402 of the Clean Water Act, 33 U.S.C. §§ 1311 and 1342, and violations of "effluent standard(s) or limitation(s)" as defined by section 505, 33 U.S.C. § 1365.

25. On information and belief, the violations committed by Defendant are ongoing or are reasonably likely to continue to occur. Any and all additional violations of the General Permit and the CWA which occur after those described in Plaintiff’s Notice Letter but before a final decision in this action should be considered continuing violations subject to this Complaint.

26. Without the imposition of appropriate civil penalties and the issuance of an injunction, Defendant is likely to continue to violate the General Permit and the CWA to the further injury of the Plaintiff, its member(s) and others.

27. A copy of this Complaint was served upon the Attorney General of the United States and the Administrator of the USEPA as required by 33 U.S.C. § 1365(c)(3).

## VI. RELIEF REQUESTED

Wherefore, Plaintiff respectfully requests that this Court grant the following relief:



Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

A. Issue a declaratory judgment that Defendant has violated and continues to be in violation of the General Permit and Sections 301 and 402 of the Clean Water Act, 33 U.S.C. §§ 1311 and 1342;

B. Enjoin Defendant from operating its facility in a manner that results in further violations of the General Permit or the Clean Water Act;

C. Order Defendant to immediately implement a Storm Water Pollution Prevention Plan that is in compliance with the General Permit;

D. Order Defendant to allow Plaintiff to participate in the development and implementation of Defendant's Storm Water Pollution Prevention Plan;

E. Order Defendant to provide Plaintiff, for a period beginning on the date of the Court's Order and running for one year after Defendant achieves compliance with all of the conditions of the General Permit, with copies of all reports and other documents which Defendant submits to the USEPA or to the WDOE regarding Defendant's coverage under the General Permit at the time it is submitted to these authorities;

F. Order Defendant to take specific actions to remediate the environmental harm caused by its violations;

G. Order Defendant to pay civil penalties of $37,500.00 per day of violation for each violation committed by Defendant pursuant to Sections 309(d) and 505(a) of the CWA, 33 U.S.C. §§ 1319(d) and 1365(a), and 40 C.F.R. § 19;

H. Award Plaintiff its litigation expenses, including reasonable attorneys' and expert witness fees, as authorized by Section 505(d) of the CWA, 33 U.S.C. § 1365(d); and

I. Award such other relief as this Court deems appropriate.



Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

RESPECTFULLY SUBMITTED this 4th day of August, 2010.

Smith & Lowney, pllc

By: _s/Richard A. Smith_______
Richard A. Smith, WSBA #21788
Attorneys for Plaintiff
2317 E. John St.,
Seattle, WA 98112
Tel: (206) 860-4102
Fax: (206) 860-4187
E-mail: rasmithwa@igc.org

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883, FAX (206) 860-4187

May 6, 2010

**Via Certified Mail - Return Receipt Requested**
Managing Agent
PSF Mechanical Inc.
9322 14th Ave. S
Seattle, WA 98108

**Re: NOTICE OF INTENT TO SUE UNDER THE CLEAN WATER ACT AND REQUEST FOR COPY OF STORMWATER POLLUTION PREVENTION PLAN**

Dear Managing Agent:

We represent Waste Action Project, P.O. Box 4832, Seattle, WA 98104, (253) 639-7245. Any response or correspondence related to this matter should be directed to us at the letterhead address. This letter is to provide you with sixty days notice of Waste Action Project's intent to file a citizen suit against PSF Mechanical Inc. under Section 505 of the Clean Water Act ("CWA"), 33 USC § 1365, for the violations described below at PSF Mechanical's facility located at 9322 14th Ave. S, Seattle, Washington. In addition, as described below, this letter is a request for a copy of, or access to, the complete and current stormwater pollution prevention plan ("SWPPP") required by PSF Mechanical's National Pollution Discharge Elimination System permit.

Stormwater discharges from PSF Mechanical's facility to the Duwamish River and/or the City of Seattle storm sewer system and/or their tributaries to these are and have been authorized under the Industrial Stormwater General Permit issued by the Washington Department of Ecology as follows: the "2002 Permit," issued on August 21, 2002, with an effective date of September 20, 2002, modified on December 1, 2004, with an expiration date of September 20, 2007; the "2007 Permit," issued on August 15, 2007, with an effective date of September 15, 2007; the "2008 Permit," issued on October 15, 2008, with an effective date of November 15, 2008, and an expiration date of April 30, 2009, but remaining in effect until December 31, 2009; and the "2010 Permit," issued on October 21, 2009, with an effective date of January 1, 2010. The substantive conditions of the 2002 Permit, the 2007 Permit, and the 2008 Permit are identical and shall be collectively referred to as conditions of the 2008 Permit. PSF Mechanical's permit number is SO3000246D.

## I. COMPLIANCE WITH STANDARDS

A. Condition S7 of the 2008 Permit and Condition S10.A of the 2010 Permit require that PSF Mechanical's discharges not cause or contribute to an excursion of Washington State water quality standards. PSF Mechanical has violated this condition by discharging stormwater that causes or contributes to a violation of state water quality standards for zinc, pH, and turbidity each and every time that there is more than a trace amount of precipitation that causes a stormwater discharge from PSF Mechanical's facility. The dates on which these violations occurred include, but are not limited to, the dates on which stormwater samples were collected that exceeded benchmarks as indicated by PSF Mechanical's Discharge Monitoring Reports:

| Monitoring Period | Parameter | Value |
|---|---|---|
| 3rd Quarter 2005 | pH | 6.35 SU |
| 3rd Quarter 2005 | zinc | 344 ug/L |
| 4th Quarter 2005 | turbidity | 65 NTU |
| 4th Quarter 2005 | pH | 6.02 SU |
| 4th Quarter 2005 | zinc | 5600 ug/L |
| 1st Quarter 2006 | zinc | 1400 ug/L |
| 4th Quarter 2006 | zinc | 197 ug/L |
| 1st Quarter 2007 | zinc | 1120 ug/L |
| 2nd Quarter 2007 | zinc | 2030 ug/L |
| 4th Quarter 2007 | pH | 6.18 SU |
| 4th Quarter 2007 | zinc | 210 ug/L |
| 1st Quarter 2008 | zinc | 1140 ug/L |
| 2nd Quarter 2008 | pH | 6.21 SU |
| 2nd Quarter 2008 | zinc | 450 ug/L |
| 4th Quarter 2008 | zinc | 600 ug/L |
| 1st Quarter 2009 | zinc | 760 ug/L |
| 4th Quarter 2009 | pH | 5.88 SU |
| 4th Quarter 2009 | zinc | 230 ug/L |

B. Condition S3.A of the 2008 Permit and Condition S1.A of the 2010 Permit require all discharges and activities authorized be consistent with the terms and conditions of the permits. PSF Mechanical has violated these conditions by discharging and acting inconsistent with the conditions of the 2008 Permit and the 2010 Permit as described in this Notice of Intent to Sue.

## II. STORMWATER POLLUTION PREVENTION PLAN

Condition S9. of the 2008 Permit sets forth requirements concerning the stormwater pollution prevention plan ("SWPPP") and best management practices ("BMPs"). Condition S3. of the 2010 Permit includes requirements that are comparable or, in some instances, identical to those in S9. of the 2008 Permit. Before July 1, 2010, Condition S3.B.4.b. of the 2010 Permit requires that PSF Mechanical either implement the requirements of Condition S9. of the 2008 Permit or the comparable requirements that it itself identifies. After July 1,

2010, S3.B.4.b. specifies mandatory BMPs for inclusion in the SWPPP and implementation. In the following sections, the references to the requirements of Condition S9. of the 2008 Permit incorporate the comparable or identical requirements of Condition S3. of the 2010 Permit.

A. Condition S9 of the 2008 Permit and Condition S3. of the 2010 Permit require PSF Mechanical to prepare and fully implement a SWPPP as specified. The SWPPP must include the best management practices ("BMPs") necessary to provide all known, available and reasonable methods of prevention, control, and treatment ("AKART"). It must also include BMPs necessary to ensure that discharges from the facility do not cause or contribute to violations of state water quality standards. PSF Mechanical is in violation of these conditions as it has failed to prepare and/or implement a SWPPP that includes AKART BMPs and BMPs necessary to comply with state water quality standards.

B. Condition S9 of the 2008 Permit and Condition S3. of the 2010 Permit require PSF Mechanical to have and implement a SWPPP that is consistent with permit requirements, fully implemented as directed by permit conditions, and updated as necessary to maintain compliance with permit conditions. In sum, PSF Mechanical is in violation of these conditions because its SWPPP is not consistent with permit requirements, has not been fully implemented and has not been updated as necessary.

The SWPPP fails to satisfy the requirements of Condition S9 of the 2008 Permit because it does not adequately describe BMPs. Condition S9.B.3 of the 2008 Permit requires that the SWPPP include a description of the BMPs that are necessary for the facility to eliminate or reduce the potential to contaminate stormwater. Condition S.9.B.3 of the 2007 Permit requires that the SWPPP document how stormwater BMPs were selected, the pollutant removal performance expected from the BMP being selected and the technical basis that supports the performance claims for the BMPs being selected and an assessment of how the selected BMP will comply with state water quality standards, satisfy the state AKART requirements, and the federal technology-based treatment requirements under 40 CFR part 125.3. As described by this subcondition and the second and third prefatory paragraphs of Condition S9 of the 2008 Permit, in lieu of such documentation ("the demonstration approach"), a permittee could choose to follow the stormwater management practices contained in approved stormwater technical manuals ("the presumptive approach"). Condition S9.A.5 of the 2008 Permit directed permittees selecting the presumptive approach to "clearly state which of the approved stormwater technical manuals the BMPs in their SWPPP are based on." Condition S3.A.3 of the 2010 Permit requires that the SWPPP include BMPs consistent with approved stormwater technical manuals or document how stormwater BMPs included in the SWPPP are demonstratively equivalent to the practices contained in the approved stormwater technical manuals, including the proper selection, implementation, and maintenance of all applicable and appropriate BMPs. PSF Mechanical's SWPPP does not comply with these requirements because it does not adequately describe BMPs and does not include BMPs consistent with approved stormwater technical manuals nor does it include BMPs that are demonstratively equivalent to such BMPs with documentation of BMP adequacy.

PSF Mechanical's SWPPP fails to satisfy the requirements of Condition S9.B.1.a of the 2008 Permit and Condition S3.B.2 of the 2010 Permit because it fails to include a facility assessment as mandated. The SWPPP fails to include an adequate facility assessment because it does not describe the industrial activities conducted at the site, the general layout of the facility including buildings and storage of raw materials, the flow of goods and materials through the facility, regular business hours and seasonal variations in business hours or in industrial activities as required.

PSF Mechanical's SWPPP fails to satisfy the requirements of Condition S9.B.1.b of the 2008 Permit and Condition S3.B.1 of the 2010 Permit because it does not include a site map that identifies significant features, the stormwater drainage and discharge structures, the stormwater drainage areas for each stormwater discharge point off-site, a unique identifying number for each discharge point, each sampling location with a unique identifying number, paved areas and buildings, areas of pollutant contact associated with specific industrial activities, conditionally approved non-stormwater discharges, surface water locations, areas of existing and potential soil erosion, vehicle maintenance areas, and lands and waters adjacent to the site that may be helpful in identifying discharge points or drainage routes.

PSF Mechanical's SWPPP fails to comply with Condition S9.B.1.c of the 2008 Permit and Condition S3.B.2.b of the 2010 Permit because it does not include an inventory of industrial activities that identifies all areas associated with industrial activities that have been or may potentially be sources of pollutants as required. The SWPPP does not identify all areas associated with loading and unloading of dry bulk materials or liquids, outdoor storage of materials or products, outdoor manufacturing and processing, onsite dust or particulate generating processes, on-site waste treatment, storage, or disposal, vehicle and equipment fueling, maintenance, and/or cleaning, roofs or other surfaces exposed to air emissions from a manufacturing building or a process area, and roofs or other surfaces composed of materials that may be mobilized by stormwater as required by these conditions.

PSF Mechanical's SWPPP does not comply with Condition S9.B.1.d of the 2008 Permit and Condition S3.B.2.c of the 2010 Permit because it does not include an adequate inventory of materials. The SWPPP does not include an inventory of materials that lists the types of materials handled at the site that potentially may be exposed to precipitation or runoff and that could result in stormwater pollution, a short narrative for material describing the potential for the pollutants to be present in stormwater discharge that is updated when data becomes available to verify the presence or absence of the pollutants, a narrative description of any potential sources of pollutants from past activities, materials and spills that were previously handled, treated, stored, or disposed of in a manner to allow ongoing exposure to stormwater as required. The SWPPP does not include the method and location of on-site storage or disposal of such materials and a list of significant spills and significant leaks of toxic or hazardous pollutants as these permit conditions require.

PSF Mechanical's SWPPP does not comply with Condition S9.B.3.a.i of the 2008 Permit and Condition S3.B.3 of the 2010 Permit because it does not identify specific

individuals by name or title whose responsibilities include SWPPP development, implementation, maintenance and modification.

Condition S3.B.4 of the 2010 Permit requires permittees include in their SWPPPs and implement certain mandatory BMPs no later than July 1, 2010 unless site conditions render the BMP unnecessary, infeasible, or an alternative and equally effective BMP is provided. Permittees are required to implement either the mandatory BMPs described in Condition S3.B.4 of the 2010 Permit or the BMP requirements of the 2008 Permit prior to July 1, 2010 under this condition. PSF Mechanical is in violation of this requirement because it has failed to include in its SWPPP and implement the mandatory BMPs of the 2010 Permit or the BMP requirements of the 2008 Permit.

PSF Mechanical's SWPPP does not comply with Condition S9.B.3.a of the 2008 Permit and Condition S3.B.4.b.i of the 2010 Permit because it does not include required operational source control BMPs in the following categories: good housekeeping (including definition of ongoing maintenance and cleanup of areas that may contribute pollutants to stormwater discharges, and a schedule/frequency for each housekeeping task); preventive maintenance (including BMPs to inspect and maintain stormwater drainage, source controls, treatment systems, and plant equipment and systems, and the schedule/frequency for each task); spill prevention and emergency cleanup plan (including BMPs to prevent spills that can contaminate stormwater, for material handling procedures, storage requirements, cleanup equipment and procedures, and spill logs); employee training (including an overview of what is in the SWPPP, how employees make a difference in complying with the SWPPP, spill response procedures, good housekeeping, maintenance requirements, and material management practices, how training will be conducted, the frequency/schedule of training, and a log of the dates on which specific employees received training); inspections and recordkeeping (including documentation of procedures to ensure compliance with permit requirements for inspections and recordkeeping, including identification of personnel who conduct inspections, provision of a tracking or follow-up procedure to ensure that a report is prepared and appropriate action taken in response to visual monitoring, definition of how PSF Mechanical will comply with signature and record retention requirements, and certification of compliance with the SWPPP and Permit).

PSF Mechanical's SWPPP does not comply with Condition S9.A.1 of the 2008 Permit and Condition S3.B.4.b.i.7 of the 2010 Permit because it does not include measures to identify and eliminate the discharge of process wastewater, domestic wastewater, noncontact cooling water, and other illicit discharges to stormwater sewers, or to surface waters and ground waters of the state.

PSF Mechanical's SWPPP does not comply with Condition S9.B.3.b of the 2008 Permit and Condition S3.B.4.b.ii of the 2010 Permit because it does not include required structural source control BMPs to minimize the exposure of manufacturing, processing, and material storage areas to rain, snow, snowmelt, and runoff.

PSF Mechanical's SWPPP does not comply with Condition S9.B.3.c of the 2008 Permit and Condition S3.B.4.b.iii of the 2010 Permit because it does not include treatment BMPs as required.

PSF Mechanical's SWPPP fails to comply with Condition S9.B.4 of the 2008 Permit and Condition S3.B.4.b.v of the 2010 Permit because it does not include BMPs to prevent the erosion of soils or other earthen materials and prevent off-site sedimentation and violations of water quality standards.

PSF Mechanical's SWPPP fails to satisfy the requirements of Condition S9.B.2 of the 2008 Permit and Condition S3.B.5 of the 2010 Permit because it fails to include a stormwater sampling plan as required. The SWPPP does not include a sampling plan that identifies points of discharge to surface waters, storm sewers, or discrete ground water infiltration locations, documents why each discharge point is not sampled, identifies each sampling point by its unique identifying number, identifies staff responsible for conducting stormwater sampling, specifies procedures for sampling collection and handling, specifies procedures for sending samples to the a laboratory, identifies parameters for analysis, holding times and preservatives, laboratory quantitation levels, and analytical methods, and that specifies the procedure for submitting the results to Ecology.

## III. MONITORING, REPORTING AND BENCHMARK-RELATED REQUIREMENTS

A. Condition S4.A of the 2008 Permit and Condition S4.B of the 2010 Permit require PSF Mechanical to collect a sample of its stormwater discharge once during every calendar quarter. Condition S4.A of the 2008 Permit required PSF Mechanical collect such a sample at each distinct point of discharge offsite if activities and site conditions at the facility that may pollute the stormwater are likely to result in discharges that will significantly vary in the concentration or type of pollutants. Condition S4.B.2 of the 2010 Permit requires PSF Mechanical collect such a sample at each distinct point of discharge offsite except for substantially identical outfalls, in which case only one of the substantially identical outfalls must be sampled. These conditions set forth sample collection criteria, but require the collection of a sample even if the criteria cannot be met. PSF Mechanical violated these conditions by failing to collect the required samples for the following periods:

1. 2nd Quarter 2005
2. 2nd Quarter 2006
3. 3rd Quarter 2006
4. 3rd Quarter 2007
5. 2nd Quarter 2009
6. 3rd Quarter 2009

B. Condition S4.C of the 2008 Permit required PSF Mechanical to take specified actions, called a "Level One Response," "each time after December 31, 2004 quarterly sample results were above a benchmark value or outside the benchmark range for pH." Condition S8.A of the 2010 Permit comparably requires that PSF Mechanical implement any Level One

Responses required under the 2008 Permit and continue to operate and/or maintain any source control or treatment BMPs related to such responses. A Level One Response comprises: a facility inspection as promptly as possible but no later than two weeks after receipt of sampling results, with the inspection evaluating possible sources of the benchmark parameter in the discharge, identifying source/operational control methods by which stormwater contamination can be further reduced, and evaluating whether any improvements or changes to the stormwater pollution prevention plan are warranted to control the benchmark parameter; summarization of the inspection results, including remedial actions taken, if any, in the stormwater pollution prevention plan; evaluating the need for a level two or three response as the Permit describes; and including a brief summary of inspection results and remedial actions with the quarterly DMR for the quarter for which the sample results were above (or outside) benchmark values. Condition S5.A of the 2008 Permit also required summaries of Level One Responses to be included with quarterly DMRs.

Condition S4.D.2 of the 2008 Permit established the following benchmarks: turbidity 25 Nephalometric Turbidity Units ("NTU"); pH 6 – 9 standard units ("SU"); zinc 117 µg/L; and oil and grease 15 mg/L. Condition S4.D.3 established the following additional benchmarks: copper 63.6 µg/L; and lead 81.6 µg/L.

PSF Mechanical has violated these requirements by failing to conduct a Level One Response in accordance with the Permit requirements described above, including the required inspection, summarization, and reporting, for each of the following benchmark exceedances:

| | Monitoring Period | Parameter | Sample Result |
|---|---|---|---|
| 1. | 3rd Quarter 2005 | pH | 6.35 SU |
| 2. | 3rd Quarter 2005 | zinc | 344 ug/L |
| 3. | 4th Quarter 2005 | turbidity | 65 NTU |
| 4. | 4th Quarter 2005 | pH | 6.02 SU |
| 5. | 4th Quarter 2005 | zinc | 5600 ug/L |
| 6. | 1st Quarter 2006 | zinc | 1400 ug/L |
| 7. | 4th Quarter 2006 | zinc | 197 ug/L |
| 8. | 1st Quarter 2007 | zinc | 1120 ug/L |
| 9. | 2nd Quarter 2007 | zinc | 2030 ug/L |
| 10. | 4th Quarter 2007 | zinc | 210 ug/L |
| 11. | 4th Quarter 2007 | pH | 6.18 SU |
| 12. | 1st Quarter 2008 | zinc | 1140 ug/L |
| 13. | 2nd Quarter 2008 | pH | 6.21 SU |
| 14. | 2nd Quarter 2008 | zinc | 450 ug/L |
| 15. | 4th Quarter 2008 | zinc | 600 ug/L |
| 16. | 1st Quarter 2008 | zinc | 760 ug/L |
| 17. | 4th Quarter 2008 | pH | 5.88 SU |
| 18. | 4th Quarter 2008 | zinc | 230 ug/L |

C. Condition S4.C of the 2008 Permit required PSF Mechanical to perform a Level Two Response to be initiated immediately whenever two out of the previous four quarterly

sampling results collected after December 31, 2004 are above the identified action levels or outside of the action range for pH. Condition S4.C of the 2008 Permit established the following action levels: turbidity 50 NTU; pH 5-10 SU; zinc 372 µg/L; oil and grease 30 mg/L; copper 149 µg/L; and lead 159 µg/L. Condition S8.A of the 2010 Permit requires that PSF Mechanical implement any Level Two Responses required under the 2008 Permit and continue to operate and/or maintain any source control or treatment BMPs related to such responses. Discharges from the facility exceeded the action levels during the flowing sampling periods after December 31, 2004:

| | Monitoring Period | Parameter | Sample Result |
|---|---|---|---|
| 1. | 1st Quarter 2005 | zinc | 970 ug/L |
| 2. | 4th Quarter 2005 | zinc | 5600 ug/L |
| 3. | 1st Quarter 2006 | zinc | 1400 ug/L |
| 4. | 1st Quarter 2007 | zinc | 1120 ug/L |
| 5. | 2nd Quarter 2007 | zinc | 2030 ug/L |
| 6. | 1st Quarter 2008 | zinc | 1140 ug/L |
| 7. | 2nd Quarter 2008 | zinc | 450 ug/L |
| 8. | 4th Quarter 2008 | zinc | 600 ug/L |
| 9. | 1st Quarter 2008 | zinc | 760 ug/L |

As required by Condition S4.C of the 2008 Permit, a Level Two response comprises: prompt identification of the potential sources of stormwater contamination that are contributing to the presence of the benchmark parameter; investigation of all available options of source control, operational control and stormwater treatment BMPs to reduce stormwater contaminant levels to below benchmark values; implementation of additional source and operational BMPs identified as part of this investigation; preparation of a Level Two source control report outlining actions taken, planned and any schedule for implementation of source and operational BMPs to reduce stormwater contaminant levels; and submission of the Level Two source control report to Ecology within six months of initiating a Level Two response.

PSF Mechanical is in violation of these conditions by failing to immediately initiate Level Two Responses whenever two out of the previous four quarterly sampling results collected after December 31, 2004 and before January 1, 2010 were above the identified action levels for a parameter, and for failing to perform Level Two responses for these parameters in accordance with the permit requirements describe above, including failure to promptly identify potential sources of contamination, failure to investigate all available options for BMPs, failure to implement source and operational BMPs identified in such investigations, and failure to prepare and submit to Ecology Level Two source control reports for these parameters. As indicated in the table above, these violations include, but are not limited to, PSF Mechanical's failure to fulfill these obligations for zinc upon receipt of its sampling results for the 4th quarter of 2005.

D. Condition S4.C of the 2008 Permit required PSF Mechanical to perform a "Level Three Response," which shall be immediately initiated "if any four quarterly samples collected after December 31, 2004 are above the action levels." The 2008 Permit established

the action levels describe in paragraph III.C. above. A Level Three Response comprises: prompt identification of the potential sources of stormwater contamination that are causing or contributing to the presence of the benchmark parameter; investigation of all available options of source control, operational control and stormwater treatment BMPs to reduce stormwater contaminant levels to or below permit benchmark values; implementation of the additional source control, operational control and stormwater treatment BMPs identified as part of this investigation within twelve months of initiating the level three response; preparation of a level three source control report outlining actions taken, planned and scheduled to reduce stormwater contaminant levels including stormwater treatment BMPs; and submission of the level three source control report to Ecology within twelve months of initiation of the level three response. Condition S8.A of the 2010 Permit requires that PSF Mechanical implement any Level Three Responses required under the 2008 Permit and continue to operate and/or maintain any source control or treatment BMPs related to such responses

PSF Mechanical is in violation of these conditions failing to immediately initiate Level Three responses whenever four of its quarterly sampling results collected after December 31, 2004 and before January 1, 2010 were above the identified action levels for a parameter, and for failing to perform Level Three responses for these parameters in accordance with the Permit requirements describe above, including failure to promptly identify potential sources of contamination, failure to investigate all available options for BMPs, failure to implement source control, operational control, and treatment BMPs identified in such investigations, and failure to prepare and submit to Ecology Level Three source control reports for these parameters. As indicated in the table in paragraph III.E above, these violations include, but are not limited to, PSF Mechanical's failure to fulfill these obligations for zinc upon receipt of its monitoring results for the 1st quarter of 2007.

E. Condition S4.D.1 of the 2008 Permit required PSF Mechanical to perform quarterly visual monitoring during stormwater sampling. This visual monitoring was to include observations made at sampling locations at the time of sampling; an inspection of stormwater discharges for the presence of floating materials, visible sheen, discoloration, turbidity, and odor; and an assessment of the best management practices required by the permit and the SWPPP. Discharge locations that were not sampled were to be visually inspected at least annually during a storm event. The visual monitoring and inspections were to be conducted by the personnel specified by the SWPPP, who was to verify that the description of potential pollutant sources was accurate, that the site map required in the SWPPP had been updated or modified to reflect current conditions, and that the controls to reduce pollutants in stormwater discharges were implemented and adequate.

In addition to quarterly visual inspection during storm events, Condition S4.D.1 of the 2008 Permit required PSF Mechanical conduct at least one dry season (July, August, September) inspection each year and performed by the personnel specified in the SWPPP that occurred after at least seven consecutive days of no precipitation. The dry season inspection was to determine the presence of non-stormwater discharges, which must have been eliminated within thirty days unless authorized by the Permit. The 2008 Permit also required PSF Mechanical notify Ecology if non-stormwater discharges were discovered.

The 2008 Permit required that the results of each inspection/visual monitoring event be summarized in an inspection report or checklist and entered into or attached to the SWPPP, and be signed by the person making the observations. Visual monitoring reports were to be reviewed and signed by a duly authorized representative of PSF Mechanical. Monitoring reports were to include a certification of whether, in the judgment of the person signing the report, PSF Mechanical was in compliance or non-compliance with the SWPPP and the 2008 Permit, and to identify any incidents of non-compliance. If the site inspection indicated that the requirements of the SWPPP or the Permit were not being met, the 2008 Permit required that the visual inspection report include a summary of the actions that will be taken to meet these requirements.

Condition S7.A of the 2010 Permit requires that monthly visual inspection be conducted at the facility by qualified personnel. Each inspection is to include observations made at stormwater sampling locations and areas where stormwater associated with industrial activity is discharged, observations for the presence of floating materials, visible oil sheen, discoloration, turbidity, odor, etc. in the stormwater discharges, observations for the presence of illicit discharges, a verification that the descriptions of potential pollutant sources required by the permit are accurate, a verification that the site map in the SWPPP reflects current conditions, and an assessment of all BMPs that have been implemented (noting the effectiveness of the BMPs inspected, the locations of BMPs that need maintenance, the reason maintenance is needed and a schedule for maintenance, and locations where additional of different BMPs are needed).

Condition S7.C of the 2010 Permit requires that PSF Mechanical record the results of each inspection in an inspection report or checklist that is maintained on-site and that documents the observations, verifications, and assessments required. The report/checklist must include the time and date of the inspection, the locations inspected, a statement that, in the judgment of the person conducting the inspection and the responsible corporate officer, the facility is either in compliance or out of compliance with the SWPPP and the 2010 Permit, a summary report and schedule of implementation of the remedial actions that PSF Mechanical plans to take if the site inspection indicates that the facility is out of compliance, the name, title, signature and certification of the person conducting the facility inspection, and a certification and signature of the responsible corporate officer or a duly authorized representative.

PSF Mechanical is in violation of these requirements of Condition S4.D.1 of the 2008 Permit and Condition S7 of the 2010 Permit because it has failed to conduct the requisite visual monitoring and inspections, failed to prepare and maintain the requisite inspection reports or checklists, and failed to make the requisite certifications and summaries since required to do so under the 2008 Permit and the 2010 Permit.

## IV. RECORDKEEPING REQUIREMENTS

A. Condition S5.C of the 2008 Permit required PSF Mechanical to record specified information for each sample taken, including the date, exact place, method, and time of sampling or measurement; the individual who performed the sampling or measurement; the dates the analyses were performed; the individual who performed the analyses; the analytical techniques or methods used, and the results of all analyses. Condition S4.B.3 of the 2010 Permit requires PSF Mechanical record and retain specified information for each stormwater sample taken, including the sample date and time, a notation describing if PSF Mechanical collected the sample within the first 30 minutes of stormwater discharge event, an explanation of why PSF Mechanical could not collect a sample within the first 30 minutes of a stormwater discharge event, the sample location, method of sampling and of preservation, and the individual performing the sampling. PSF Mechanical is in violation of these conditions as it has not recorded each of these specified items for samples taken since required to under the permits.

B. Condition S5.B of the 2008 Permit required PSF Mechanical to retain records of all monitoring information, inspection reports, and any other documentation of compliance with permit requirements for a minimum of five years. Condition S9.C of the 2010 Permit requires PSF Mechanical to retain for a minimum of five years a copy of the 2010 Permit, a copy of PSF Mechanical's coverage letter, records of all sampling information, inspection reports including required documentation, any other documentation of compliance with permit requirements, all equipment calibration records, all BMP maintenance records, all original recordings for continuous sampling instrumentation, copies of all laboratory results, copies of all required reports, and records of all data used to complete the application for the 2010 Permit. PSF Mechanical is in violation of these conditions because it has failed to retain records of such information, reports, and other documentation.

## V. PUBLIC ACCESS TO STORMWATER POLLUTION PREVENTION PLAN

Pursuant to Condition S9.F of the 2010 Permit, Waste Action Project hereby requests that PSF Mechanical provide a copy of, or access to, its Stormwater Pollution Prevention Plan, complete with the inspection/visual monitoring reports or checklists, monitoring plan, employee training logs, other plans incorporated by reference and all other components as specified by permit requirements. The copy of the SWPPP and any other communications about this request should be directed to the undersigned at the letterhead address.

Should PSF Mechanical fail to provide the requested complete copy of, or access to, its SWPPP within the time required by Condition S9.F of the 2010 Permit, it will be in violation of that condition, which violation shall also be subject to this Notice of Intent to Sue and any ensuing lawsuit.

The above-described violations reflect those indicated by the information currently available to Waste Action Project. These violations are ongoing. Waste Action Project

intends to sue for all violations, including those yet to be uncovered and those committed after the date of this Notice of Intent to Sue.

Under Section 309(d) of the CWA, 33 USC § 1319(d), each of the above-described violations subjects the violator to a penalty of up to $32,500 per day for violation days on or before January 12, 2009, and up to $37,500 per day for violation days after January 12, 2009. In addition to civil penalties, Waste Action Project will seek injunctive relief to prevent further violations under Sections 505(a) and (d) of the CWA, 33 USC § 1365(a) and (d), and such other relief as is permitted by law. Also, Section 505(d) of the CWA, 33 USC § 1365(d), permits prevailing parties to recover costs, including attorney's fees.

Waste Action Project believes that this NOTICE OF INTENT TO SUE sufficiently states grounds for filing suit. We intend, at the close of the 60-day notice period, or shortly thereafter, to file a citizen suit against PSF Mechanical Inc. under Section 505(a) of the Clean Water Act for violations.

During the 60-day notice period, we would be willing to discuss effective remedies for the violations addressed in this letter and settlement terms. If you wish to pursue such discussions in the absence of litigation, we suggest that you initiate those discussions within 10 days of receiving this notice so that a meeting can be arranged and so that negotiations may be completed before the end of the 60-day notice period. We do not intend to delay the filing of a complaint if discussions are continuing when the notice period ends.

Very truly yours,

SMITH & LOWNEY, PLLC

By: ____________________
Richard A. Smith

c: Lisa P. Jackson, Administrator, U.S. EPA
Dennis J. McLerran, Administrator, Region 10 U.S. EPA
Ted Sturdevant, Director, Washington Department of Ecology
Hillis Clark Martin & Peterson PS, Registered Agent, 1221 Second Ave. #500, Seattle, WA 98101